## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHARIS K ROGERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number: |
| | ) | **5:17-cv-00264-AKK** |
| **JOHN WAPLES, ET AL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Charis Rogers filed a qui tam action against her former employer, Clearview Cancer Institute (CCI), and several of its physicians, alleging that they used unaccredited equipment and fraudulently billed Medicare and Tricare in violation of the False Claims Act.  Doc. 1.  Rogers subsequently amended her complaint to add a retaliation claim after CCI discharged her shortly after the court unsealed the complaint.  Doc. 11.  Presently before the court is the Defendants' motion to dismiss, doc. 20, which is fully briefed and ripe for consideration, docs. 20; 24; & 26.  After reading the briefs and considering the relevant law, the court grants the motion solely as to Rogers' qui tam claims.

### I.    LEGAL STANDARD FOR A MOTION TO DISMISS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This pleading

standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

For suits under the FCA, Rule 9 of the Federal Rules of Civil Procedure imposes a heightened pleading standard, requiring that a party "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). This particularity requirement "alert[s] defendants to the precise misconduct with which they are charged," *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988), and requires the plaintiff to plead "particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government," *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015) (internal quotations omitted).

## II.    FACTUAL ALLEGATIONS

Rogers began her employment at CCI, a cancer treatment facility, as a PET Nuclear Medicine Technologist.  Doc. 11 at 11.  During the period relevant to this lawsuit, she held the position of Director of Imaging.  *Id.*  Based on her review of patients' files and diagnostic equipment documents, Rogers maintains that the Defendants "used unaccredited diagnostic imaging equipment to run PET and CT scans in violation of federal regulations."  *Id.* at 12-13.  Consequently, she alleges that the Defendants "knowingly, systematically, and illegally submitted hundreds to thousands of false and/or fraudulent bills to Medicare and Tricare representing that they were in compliance with [applicable] regulations," and billed for medically unnecessary PET and CT scans.  *Id.*

## III.    ANALYSIS

Rogers's amended complaint includes four causes of action: (1) Presentation of False Claims, 31 U.S.C. § 3729(a)(1)(A), (Count I); (2) Making or Using False Record Statement to Cause Claim to be Paid, 31 U.S.C. § 3729(a)(1)(B), (Count II); (3) Making or Using False Record Statement to Avoid an Obligation to Refund, 31 U.S.C. 3729(a)(1)(G), (Count III); and (4) Retaliation, 31 U.S.C. 3730(h), (Count IV).  Doc. 11 at 14-19.  The Defendants have moved to dismiss all four claims.  Doc. 20.  The court will address the Defendants' contentions below, beginning with the FCA claims in Part A, and the retaliation claims in Part B.

**A. FCA Claims (Counts I, II, and III)**

The nub of Rogers' FCA claims is that CCI used unaccredited equipment, in violation of the requirements set by the Centers for Medicare and Medicaid Services, and billed Medicare and Tricare for medically unnecessary procedures. Doc. 11. Therefore, to state a valid claim, Rogers must plead sufficient facts to support her contentions regarding the use of unaccredited equipment and the Defendants' ordering of unnecessary medical procedures. Rogers has failed to do so.

**1. Allegedly unaccredited equipment**

In their motion, the Defendants challenge Rogers' accreditation claim and attach a document to support their contention. Docs. 20 at 5, 9; 20-1. In the Eleventh Circuit, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). A document is "undisputed" in this context if its authenticity is not challenged. *Id.* The document at issue demonstrates that the equipment at CCI's Huntsville, Alabama facility is properly accredited by the American College of Radiology ("ACR"), one

of the accreditors approved by the Centers for Medicare and Medicaid Services.[1]

Docs. 20 at 5; 20-1 at 2. Rogers does not dispute the authenticity of the document or that it is central to her claim regarding the accreditation of the equipment. *See* doc. 24. Consequently, the court may consider this evidence, which contradicts Rogers' allegation, as part of this motion. *See Horsley*, 304 F.3d at 1134.

Rogers attempts to overcome this evidence by asserting that "the Defendants tricked the ACR in the accreditation process," *see* doc. 24 at 5, and simultaneously attaching a second amended complaint to her response brief, *see* doc. 24-1. The proposed second amended complaint includes this allegation of trickery. Doc. 24-1. There are several flaws with Rogers's response. First, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999). Second, although courts freely grant leave to amend pleadings "when justice so requires," Fed. R. Civ. P. 15(a), courts have the discretion to deny these motions "when the moving party's delay was the result of bad faith, dilatory tactics, or sheer inadvertence, or when the moving party offers no adequate explanation for a lengthy delay." *In re Engle Cases*, 767 F.3d 1082, 1119 (11th Cir. 2014). This is precisely the situation here, where Rogers has

---

[1] According to ACR's publicly available list of providers, CCI is accredited to provide the following imaging modalities: PET scans, CT scans, MRIs, Ultrasounds, and Nuclear Medicine scans. *See* http://accreditationfacilitylist.acr.org (entry number 803, 1273, 27719, 34654, and 1269).

offered no explanation for her failure to allege in her original complaint or first amended complaint that the Defendants "swapped out" machines—information that was presumably available to her before she filed her complaint. *See* doc. 24. Accordingly, to the extent Rogers' response can be construed as a motion for leave to file a second amended complaint, the court denies the motion. *See Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (affirming the denial of leave to amend where the plaintiff offered no explanation for why she could not have included the proposed amended pleadings in her initial complaints). Finally, Rogers does not allege or plead that she has any personal knowledge that the Defendants "swapped out" the machines to trick ACR; nor has she supplied any evidence to support this assertion. *See* docs. 24; 24-1. Such a conclusory allegation fails to state claim. *See Iqbal*, 556 U.S. at 678.

### 2. Allegedly unnecessary medical procedures

Rogers' next allegation, that CCI "systematically, and illegally billed for medically unnecessary PET and CT scans when those procedures were not medically necessary," *see* doc. 11 at 13, fails to satisfy the requisite particularity for pleading fraud under Rule 9(b). Rogers cites only a single instance of fraudulent billing: the Defendants allegedly ordered a CT scan for a terminally ill patient bound for hospice care. *See* doc. 11 at 13. One incident is not tantamount to a "systematic" pattern or pervasive fraud. *See* doc. 11 at 13. Although

"[n]othing requires [Rogers] to state every factual detail concerning every alleged fraudulent claim submitted," she must at least "plead some representative examples." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir. 2006). Rogers failed to do so and consequently has not satisfied Rule 9(b). *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) (complaint failed to satisfy Rule 9(b) where it "used vague allegations that improper practices took place 'everywhere [the defendant] does business'").

Rogers's contention is also conclusory in that she lacks a sufficient factual basis for her belief that the procedure she cites was medically unnecessary. She admits as much in her response brief where, implicitly noting the speculative nature of her claim, she poses the rhetorical question, "If a patient is terminally ill, why would his treating physician order [CT scans]?" Doc. 24 at 6. Rogers is not a physician, however, and was not involved in the treatment decisions concerning CCI's patients. Therefore, her contentions regarding medical necessity are wholly speculative and lack the indicia of reliability required under Rule 9(b). *See Corsello*, 428 F.3d at 1013. Moreover, as the Defendants correctly point out, "[p]alliative care is treatment of the discomfort, symptoms, and stress of serious illness," which necessarily entails "testing directed to the identification of underlying causes." Doc. 26 at 4 (citing National Institute of Health, U.S. National Library of Medicine, https://medlineplus.gov/palliativecare.html).

In sum, Rogers has failed to rebut the Defendants' evidence that CCI's equipment was accredited, and her one example of purported billing for medically unnecessary procedures lacks the particularity required under Rule 9(b). As a result, her FCA claims (Counts I-III) are due to be dismissed.

## B. Retaliation Claim

Finally, in Count IV, Rogers alleges that CCI discharged her roughly a month after the court unsealed her complaint, despite having thirteen straight years of positive performance reviews. Doc. 11 at 16-19. The Defendants have also moved to dismiss this claim, contending that Rogers failed to plead that they "became aware of [the] original complaint at the time it was unsealed . . . [or] prior to service of the First Amended Complaint on September 28, 2017." Doc. 20 at 10. The Defendants are correct that the amended complaint does not *expressly* allege that they knew of the lawsuit when they discharged Rogers. However, knowledge is necessarily implied in Rogers's allegation that the Defendants discharged her one month after the court unsealed the complaint, ostensibly for "attitudinal issues," but that "the true reason for termination was the filing of the original Complaint." Doc. 11 at 14. At the pleading stage, these allegations are sufficient to establish the requisite knowledge. *See Citadel Commerce Corp. v. Cook Sys., LLC*, No. 808-CV-1923-T-33TGW, 2009 WL 1230067, at *3 (M.D. Fla. May 5, 2009) (holding that, although the "complaint does not expressly"

allege the defendants' knowledge, "the circumstances alleged in the complaint clearly imply that the Defendants were aware"). Whether Rogers can actually show this requisite knowledge is a matter for another day. At this juncture, however, because Rogers pleads that the Defendants discharged her within five weeks of learning of her suit, her retaliation claim may proceed. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks between alleged knowledge of protected activity and retaliatory action was "sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case").

## CONCLUSION

Consistent with this opinion, the Defendants' Motion to Dismiss, doc. 20, is **GRANTED** as to Counts I, II, and III of Rogers' first amended complaint, doc. 11. These counts are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Count IV (retaliation).

**DONE** the 3rd day of May, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE